# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MARY NISI, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 18 C 4861 |
| DOROTHY BROWN, in her official capacity as Clerk of the Circuit Court of Cook County, Illinois, | ) ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mary Nisi filed this putative class action lawsuit alleging that Defendant Dorothy Brown, in her official capacity as Clerk of the Circuit Court of Cook County ("the Clerk"), violated the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.*, by improperly disclosing personal information derived from motor vehicle records. The Clerk subsequently filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting among other things that Nisi's claim is barred by the Eleventh Amendment. The Court grants the motion, albeit on a somewhat different ground.

## BACKGROUND

In March 2005, Mary Nisi received a speeding ticket which was sent to the Clerk for processing. Compl. Ex. 1. The ticket included identifying information such as Nisi's gender, date of birth, home address, and driver's license number. According to the complaint, the Clerk allows members of the public to access that personal information (and the personal information of all others who receive traffic citations in Cook County) through electronic computer terminals located

at all Cook County courthouses. Nisi filed suit in 2018,[1] alleging that such conduct violates the DPPA. The complaint seeks both injunctive and monetary relief.

The DPPA prohibits state departments of motor vehicles ("DMVs") and their employees from disclosing or making available to a third-party personal information contained in an individual's motor vehicle record. 18 U.S.C. § 2721. It also makes it "unlawful for any ***person*** knowingly to obtain or disclose" that personal information. § 2722(a) (emphasis added). The statute explicitly defines a "person" as "an individual, organization or entity" but ***not*** "a State or agency thereof." § 2725(2). State DMVs with policies of noncompliance are subject to civil penalties imposed by the U.S. Attorney General, § 2723(b), while "persons" in violation of the statute may be sued civilly. § 2724(a). Nisi maintains that the Clerk is a "person" who has violated the statute and filed suit under § 2724(a). The Clerk moved to dismiss the complaint, arguing that it is barred by the Eleventh Amendment and fails to state a claim under Rule 12(b)(6). For the reasons discussed below, the Court agrees that Nisi's claim against the Clerk, acting in her official capacity, must be dismissed—not because it is barred by the Eleventh Amendment (a question the Court does not reach) but because the DPPA does not provide a private right of action against the Clerk in her official capacity.

## DISCUSSION

The Clerk's lead argument is that, as a state official sued in her official capacity, she is immune from Nisi's DPPA action because the Eleventh Amendment prohibits federal courts from exercising jurisdiction over suits brought by individual litigants against a state. U.S. Const. amend. XI; *Hans v. Louisiana*, 134 U.S. 1 (1890). Presumably, the Clerk leads with this defense, and invokes Rule 12(b)(1) in making it, because it is often characterized as "jurisdictional." The

---

[1] The Clerk has not argued that Nisi's claim is time-barred.

Seventh Circuit, however, has explained that an Eleventh Amendment defense "is unusual in that it does not strictly involve subject matter jurisdiction." *See Indiana Protection and Advocacy Servs. v. Indiana Family and Social Servs. Admin.* ("*IPAS*"), 603 F.3d 365, 370 (7th Cir. 2010). Moreover, the Supreme Court has instructed that, before addressing an Eleventh Amendment defense, federal courts should consider the question of "whether the statute itself *permits* the cause of action it creates to be asserted against States (which it can do only by clearly expressing such an intent)." *Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765, 779 (2000) (emphasis in original). The statutory question should precede the constitutional question, the Court explained, both because it is "logically antecedent" and because resolving the statutory question—does the statute provide a private right of action against the state—carries with it no risk of "expanding the Court's power beyond the limits that the jurisdictional restriction has imposed." The overlap between the statutory and constitutional inquiries makes it unnecessary, in most cases anyway, to address the constitutional defense at all, much less first. In jumping first to her Eleventh Amendment affirmative defense, then, the Clerk pretermitted the required threshold inquiry as to whether the DPPA authorizes official-capacity claims against state officials like the Clerk. The Court, however, must attend first to the statutory question. *Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000) ("the district court should have dismissed the official-capacity claims before addressing the Eleventh Amendment defense, the sequence ordained by *Vermont Agency . . . .*").

### DPPA's Private Right of Action

The Court concludes that the DPPA does not provide a private right of action against state officials acting in their official capacities. Section 2724 of the DPPA provides an express private right of action against any "person" who knowingly discloses personal information from a motor

3

vehicle record for an unauthorized purpose. Under the statute, "person" means "an individual, organization or entity, but does not include a State or agency thereof." 18 U.S.C. § 2725(2). This carve out raises the question of whether the Clerk, a state official acting in her official capacity, constitutes the "State" for purposes of DPPA liability.

Invoking both the plain text of § 2725(2) and the familiar interpretive canon of *expressio unius est exclusio alterius*, one might infer that by providing an **express** liability carve out for states and their agencies, Congress did not intend to create an **implicit** liability exemption for state officials acting in their official capacities. *See, e.g.*, *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6-7 (2000) ("Where a statute . . . names the parties granted [the] right to invoke its provisions, . . . such parties only may act.") (citing 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 47.23, p. 217 (5th ed.1992)) (internal quotation marks omitted).[2] But that inference would run afoul of the well-established principle that a state official in her official capacity "*is* the state." *Fritz v. Evers*, 907 F.3d 531, 533 (7th Cir. 2018) (emphasis in original). "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits

---

[2] As a textual matter, however, an argument based on the omission of an express carve out for liability of state officials sued in their official capacities may prove too much, because its logic would suggest that in enacting the DPPA, Congress intended to provide a private right of action against state officials in their official capacities to seek both prospective injunctive relief **and damages**, notwithstanding the bedrock principle that the Eleventh Amendment prohibits suits for damages against state officials in their official capacities. *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1009 (7th Cir. 2000) ("Federal suits against state officials in their official capacities are barred by the Eleventh Amendment."); *Franklin v. Zaruba*, 150 F.3d 682, 684 (7th Cir. 1998) ("The Eleventh Amendment, which bars suits for damages against states, therefore bars suits against state officials in their official capacities as well.").

against state officials in their official capacity . . . should be treated as suits against the State."); *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam ) ("The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.").

In *Will*, the Supreme Court addressed the relationship between the sovereign immunity conferred on states by the Eleventh Amendment and the private right of action for deprivations of "rights, privileges, or immunities secured by the Constitution and laws" of the United States provided against a "person" acting under color of state law in 42 U.S.C. § 1983. Although confirming that the scope of § 1983 and the Eleventh Amendment are distinct issues, the Court concluded that the reach of § 1983's private right of action against state actors was not intended to abrogate the Eleventh Amendment sovereign immunity of states or other well-established immunities or defenses under the common law. The Court accordingly held that, consistent with longstanding principle, "neither a State nor its officials acting in their official capacities are "persons" under § 1983. *Will,* 491 U.S. at 71.

There seems little reason to believe that in enacting the DPPA Congress was any more interested in abrogating well established principles of sovereign immunity than it was when it adopted § 1983 more than 100 years earlier.[3] To the contrary, Congress made explicit in the DPPA what the Supreme Court had to infer with respect to its intentions regarding the reach of § 1983; the latter contains no express carve out for state actors, while the DPPA does. And in exempting

---

[3] This is not to say that Congress *could* have abrogated Eleventh Amendment immunity had it wished to do so in enacting the DPPA. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 72-73 (1996) (rejecting proposition that Congress could circumvent limitations on Article III judicial power through the exercise of its power to regulate commerce under Article I). *Cf. Fitzpatrick v. Bitzer*, 427 U.S. 445, 448 (1976) (holding that Fourteenth Amendment provides Congress the authority to enact legislation in derogation of state sovereign immunity under the Eleventh Amendment).

5

expressly what § 1983 exempts implicitly, it is reasonable to conclude, in the absence of an explicit contradiction, that Congress was aware of, and intended to incorporate, the longstanding limitation on private suits against states to enforce federal civil rights that the Court had recognized in § 1983. *See, e.g., Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1762 (2018) ("When Congress used the materially same language . . . it presumptively was aware of the longstanding judicial interpretation of the phrase and intended for it to retain its established meaning."); *Bragdon v. Abbott,* 524 U.S. 624, 645 (1998) ("When administrative and judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its administrative and judicial interpretations as well."); *Lorillard v. Pons,* 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change."). Even though the DPPA carve out does not expressly refer to state officials in their official capacities, it is difficult to imagine that in enacting the DPPA, Congress intended, without comment, to define a suable person exemption that is narrower than the exemption that the Court had interpreted § 1983 to include even in the absence of ***any*** express exemption.

The *Will* Court, to be sure, recognized an exception to the restriction on the scope of § 1983's private right of action, holding that "because official-capacity actions for prospective relief are not treated as actions against the State" under established sovereign immunity doctrine, private litigants can assert § 1983 claims seeking prospective injunctive relief against state officials in their official capacities. *Will,* 491 U.S. at 71 n.10. That exception in sovereign immunity doctrine derives, in turn, from the Supreme Court's holding in *Ex parte Young*, where the Supreme Court permitted claims for prospective injunctive relief against state officials in their official capacities

on the premise that a state official violating the constitution is acting without the authority of the state and is therefore not shielded by the state's immunity.[4] 209 U.S. 123, 159-60 (1908).

But the Court is not persuaded that Congress intended for the *Ex parte Young* exception to apply in private actions under the DPPA. To the contrary, pursuant to the Supreme Court's reasoning in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996),[5] it appears that Congress intended to foreclose private actions against state officials **regardless** of the type of relief sought. In *Seminole Tribe,* the Supreme Court essentially created an exception to *Ex parte Young*'s exception, holding that the *Ex parte Young* doctrine does not apply where Congress has prescribed "a detailed remedial scheme for the enforcement against a State of a statutorily created right." *Id*. at 74. The statute at issue in *Seminole Tribe* was the Indian Gaming Regulatory Act ("IGRA"), which required states to negotiate in good faith with Native American tribes when entering into compacts regarding gaming regulations. 25 U.S.C. § 2710(d)(1). The Supreme Court held that Congress intended for the Act's remedial provisions—under which a court could enforce the

---

[4] The *Ex parte Young* exception does not permit the recovery of retroactive damages; plaintiffs may obtain monetary relief from the state's treasury only where such relief is "ancillary" to the prospective equitable relief. *McDonough Associates, Inc. v. Grunloh*, 722 F.3d 1043, 1050 (7th Cir. 2013). Nisi argues that her claims for damages are permissible because they are ancillary to the equitable relief she seeks. Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss at 3. Even if the DPPA provided an *Ex parte Young* exception to its bar on suits against the state, however, Nisi's argument would fail on the merits. Relief that must be paid from a state's treasury, as would be the case here, is ancillary to equitable relief only when the expenditure would be "a necessary consequence" of compliance with the court's order. *Edelman v. Jordan*, 415 U.S. 651, 668 (1974). Nisi seeks monetary damages to remedy a past injury (namely, the Clerk's failure to protect her personal information over the last several years). Such compensatory payments would not be an inevitable consequence of complying with an injunction and are therefore barred by the Eleventh Amendment. *McDonough Associates, Inc.*, 722 F.3d at 1053 (court ordered payment of debt to private party from state treasury violates Eleventh Amendment).

[5] The Clerk has not specifically argued that *Seminole Tribe* applies (even though Nisi nevertheless addressed the argument in her response brief). Because the Clerk's argument regarding the scope of private litigation under the DPPA overlaps with *Seminole Tribe*'s reasoning, however, the Court considers it here.

7

negotiation requirement only by mandating that the tribe and the state enter a compact within 60 days, ordering the parties to submit to mediation, or, as a last resort, notifying the U.S. Secretary of the Interior—to foreclose *Ex parte Young* actions. *Seminole Tribe*, 517 U.S. at 75. According to the Court, "[t]he fact that Congress chose to impose upon the State a liability that is significantly more limited than would be the liability imposed upon the state officer under *Ex parte Young*" was evidence of that intent. *Id.* at 75-76.

Such is also the case with the DPPA, which subjects only "persons"—defined to exclude the state and its agencies—to criminal fines and private actions and subjects only state DMVs to civil penalties imposed by the United States Attorney General of up to $5,000 a day for "each day of substantial noncompliance." 18 U.S.C. § 2723(b). That Congress explicitly excluded states from the DPPA's definition of persons subject to civil suits while creating a separate avenue of enforcement against one particular type of state agency strongly suggests that it did not intend to authorize the more sweeping injunctive relief which would be available against *any* state official sued in her official capacity under *Ex parte Young*. *Cf. Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1385 (2015) ("the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.") (internal quotation marks omitted). And while neither the Supreme Court nor the Seventh Circuit has addressed this particular issue, other courts have reached the same conclusion. *See, e.g., Potocnik v. Carlson*, 9 F. Supp. 3d 981, 991 n.5 (D. Minn. 2014) ("Because the DPPA specifically provides for a separate civil-penalty provision against state motor-vehicle departments . . . the Court interprets the DPPA to preclude even suits for prospective relief against state officials acting in their official capacities."); *Wilcox v. Batiste*, 2:17-CV-122-RMP, 2018 WL 6729791, at *3 (E.D. Wash. Dec. 21, 2018) (explaining

that because the DPPA does not allow citizen enforcement lawsuits against states, the plain text "shows a congressional intent to preclude *Ex parte Young* actions").

Nisi maintains that the enforcement provisions prescribed in the DPPA do not amount to the type of intricate remedial scheme contemplated by *Seminole Tribe* because **only** state DMVs are subject to civil penalties. She insists that *Ex parte Young* should authorize civil suits against other state officials under § 2724(a) because to interpret the statute otherwise would allow those officials to disclose personal information with impunity. Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss at 6. But the fact that the DPPA explicitly provides a more limited remedy against states than could be otherwise sought under *Ex parte Young* undermines, rather than supports, her argument. It indicates that Congress considered how the statute should be enforced against states and decided to target state DMVs to the exclusion of other agencies. *See Seminole Tribe*, 517 U.S. at 45 (finding congressional intent to preclude *Ex parte Young* actions where statute mandated "only a modest set of sanctions against a state").[6]

Nisi urges this Court to follow *Collier v. Dickinson*, 477 F.3d 1306 (11th Cir. 2007), in which the Eleventh Circuit held that a plaintiff could sue a state official acting in his individual capacity under both the DPPA and § 1983 for violations of the DPPA. The court reasoned that the remedial scheme established by the DPPA was insufficient to supplant relief provided by § 1983. 477 F.3d at 1311 ("There is nothing in the statute to suggest that Congress intended to exclude Section 1983 relief."). But *Collier* did not implicate the availability of relief under the DPPA against officials in their official capacities—that is, when they are the functional equivalent of the

---

[6] It is also worth noting that other state agencies do not automatically receive carte blanche to disclose personal information merely because the DPPA regulates only state DMVs. Indeed, Illinois has its own statute prohibiting the dissemination of private information which appears to apply to state agencies generally. *See* Personal Information Protection Act, 815 ILCS 530/5.

state.[7] Because the *Collier* court was addressing only claims against officials in their ***individual*** capacities, it had no occasion to consider the question at issue here—that is, whether the exemption of states and their agencies from liability in § 2725 extends to state officials in their ***official*** capacities. That is the question to which *Seminole Tribe* is relevant, and about which *Collier*—which makes no reference to either § 2725 or *Seminole Tribe*—has nothing to say.[8] Accordingly, the Court concludes that DPPA's exclusion of states and state agencies from its definition of suable "persons" extends to state officials acting in their official capacities—regardless of the type of relief sought. In other words, the DPPA does not authorize private actions against state officials in their official capacities, even for prospective equitable relief. As such, the Court need not separately address the Clerk's admittedly related Eleventh Amendment sovereign immunity defense.

---

[7] The Eleventh Amendment generally does not bar individual capacity suits against state officials because such suits seek recovery from the defendant personally and accordingly "do not seek to conform the State's conduct to federal law." *Ameritech Corp. v. McCann*, 297 F.3d 582, 586 (7th Cir. 2002). Where a suit that is nominally against a state official in her individual capacity "*demonstrably* has the *identical* effect as a suit against the state," however, the Eleventh Amendment bar applies. *Luder v. Endicott*, 253 F.3d 1020, 1023 (7th Cir. 2001). As Nisi has sued the Clerk only in her official capacity, the Court need not assess whether the Eleventh Amendment would apply had Nisi asserted a claim against the Clerk in her individual capacity. *But see Kraege v. Busalacchi*, 687 F. Supp. 2d 834, 837-38 (W.D. Wis. 2009) (holding that Eleventh Amendment barred suit under DPPA against state officials in their individual capacities because suit was substantially a suit against the state). It also bears noting that "officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[8] Indeed, the DPPA's express limitation on the scope of private litigation suggests that, contrary to *Collier*, Congress did not intend for § 1983 to be used as an alternative to suits brought under the DPPA itself. *See Kraege,* 687 F. Supp. 2d at 839-40 (holding that the DPPA's restrictive remedial scheme reflects Congressional intent to foreclose § 1983 remedy for DPPA violations); *Kiminski v. Hunt*, No. CIV. 13-185 JNE/TNL, 2013 WL 6872425, at *11 (D. Minn. Sept. 20, 2013) ("Congress foreclosed a § 1983 remedy for violations of any rights created by the DPPA because the DPPA explicitly provides for a comparatively restrictive private cause of action as part of a comprehensive enforcement scheme."). Nevertheless, as Nisi's argument is based solely on the Clerk's alleged violation of DPPA in her official capacity, the Court need not resolve that question in ruling on the Clerk's motion.

\* \* \*

Because the DPPA does not provide a private cause of action under which Nisi can sue the Clerk, the Court must dismiss her complaint.[9] The dismissal is without prejudice, however, because while a plaintiff must "proffer some legal basis to support [her] cause of action," *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 811 (7th Cir. 2018), the failure to identify a viable legal theory is not immediately fatal. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). That said, it is not immediately apparent that the facts Nisi alleges state a claim which could proceed under a different legal theory. Nisi should file an amended complaint, then, only if she can in good faith present a theory of liability under which she could sue the Clerk in federal court. If she can do so, the amended complaint must be filed by March 22, 2019. Failure to file by that date will result in dismissal with prejudice.

Dated: February 22, 2019

John J. Tharp, Jr.
United States District Judge

---

[9] Nisi's Motion for Entry of a Preliminary Injunction, ECF No. 6 is consequently denied as moot. In any case, the Court notes that Nisi's argument that she is likely to suffer irreparable harm if a preliminary injunction is not entered is unpersuasive. In her motion, she points only to the possibility that her information might fall into the wrong hands (*e.g.*, a hacker or disgruntled co-worker) if it remains publicly accessible. But her complaint states that the information being disclosed originated from a March 2005 speeding ticket. The fact that she has not alleged any specific harm occurring from that disclosure over the last 13 years undermines her assertion that harm is likely to occur in the future.